KEVIN KERVENG TUNG P.C.
Queens Crossing Business Center
136-20 38th Avenue, 3D
Flushing, New York 11354
(718) 939-4633

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
LIYOU XING,
on his behalf and on behalf of others similarly
situated                                                     **Case No. <ins>18-cv-06616</ins>**
                          Plaintiffs,
    -against-

MAYFLOWER INTERNATIONAL HOTEL GROUP
INC
    d/b/a Mayflower Hotel and
    d/b/a Wyndham Garden;
MAYFLOWER BUSINESS GROUP, LLC
    d/b/a Mayflower Hotel and
    d/b/a Wyndham Garden;
MAYFLOWER INN CORPORATION
    d/b/a Mayflower Hotel and
    d/b/a Wyndham Garden;
MAYFLOWER WENYU LLC
    d/b/a Mayflower Hotel and
    d/b/a Wyndham Garden;
YAN ZHI HOTEL MANAGEMENT INC.
    d/b/a Mayflower Hotel and
    d/b/a Wyndham Garden;
MAYFLOWER 1-1 LLC
    d/b/a Mayflower Hotel and
    d/b/a Wyndham Garden;
YUEHUA HU, WEI HONG HU a/k/a Weihong Hu,
and XIAOZHUANG GE

                          Defendants.
-------------------------------------------------------------------x
**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR
CONDITIONAL COLLEVTIVE CERTIFICATION**

## PRELIMINARY STATEMENT

Plaintiff Liyou Xing (hereinafter "Xing" or "Plaintiff") allegedly worked at Wyndham Garden Fresh Meadows Flushing first as a construction worker and then as a chef. Plaintiff seeks damages pursuant to the Fair Labor Standard Act, 29 U.S.C.§§ 201 et. seq. ("FLSA") and New York Labor Law Articles 6 and 19 for allegedly unpaid wages and overtime.

On or about February 18, 2019, Plaintiff filed five notices to Consent to Become Party on behalf of Loi Wing Kit, Shuk C, Ng-Lam, Zhongcheng Wang and Junhui Yan. This Court stroke Plaintiff's notices of consent to become a party on a conference held on March 14, 2019 and allowed Plaintiff to his motion to certify a collective action. On the status conference held on April 29, 2019, this Court made Plaintiff withdraw his motion for a collective certification without prejudice and allowed Plaintiff to refile his motion. This is the second motion for a collective action filed by Plaintiff.

Plaintiff submitted four affidavits from Junhui Yan, Shuk C, Ng-Lam and Loi Wing Kit ("Claimants") and himself to support his motion for conditional collective action. In the fouraffidavits, each alleged job involves markedly different pay scales, different hours and tasks, different overtime policies, and different compensation schemes. The Plaintiff and each of the Claimants are not similarly situated. Plaintiff's motion should be denied in its entirety.

## ARGUMENT

### I. THIS COURT SHOULD NOT GRANT PLAINTIFF'S MOTION FOR COLLECTIVE CERTIFICATION

**A. Plaintiff Is Not Entitled To Certification of the Proposed Collective Class Because the Plaintiff and Claimants are Not Similarly Situated**

The FLSA provides, in pertinent part, as follows:

Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum

1

>wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. . . . An action to recover . . . may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).

Section 216(b) provides an employee with a private right of action to recover overtime compensation and/or minimum wages. *Id.*; *Cabrera v. Stephens*, No. 16-CV-3234, 2017 U.S. Dist. LEXIS 160044 (E.D.N.Y. Sept. 28, 2017) ("The FLSA provides a private right of action to recover unpaid overtime compensation and/or minimum wages."); *Moore v. Eagle Sanitation, Inc.*, 276 F.R.D. 54, 57 (E.D.N.Y. 2011). "Although the FLSA does not contain a class certification requirement, such orders are often referred to in terms of 'certifying a class.'" *Bifulco v. Mortgage Zone, Inc.*, 262 F.R.D. 209, 212 (E.D.N.Y. 2009).

Courts within the Second Circuit apply a two-step analysis to determine whether an action should be certified as an FLSA collective action. *See Myers v. Hertz Corp.*, 624 F.3d 537, 544-45 (2d Cir. 2010).

First, the court determines whether the proposed collective members are "similarly situated." *Puglisi v. TD Bank, N.A.*, 998 F. Supp. 2d 95, 99 (E.D.N.Y. 2014); *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 442 (S.D.N.Y. 2012). If the court decides in the affirmative, then the proposed collective members must consent in writing to be bound by the result of the suit, or "opt-in." *McGlone*, 867 F. Supp. 2d at 442; *see* 29 U.S.C. § 216(b). The second step, which typically occurs after the completion of discovery, requires the court to make factual findings whether the class members are actually similarly situated. *Rosario v. Valentine Ave. Discount Store, Co.*, 828 F. Supp. 2d 508, 514 (E.D.N.Y. 2011); *Sharma v. Burberry Ltd.*, 52 F. Supp.3d

443, 451 (E.D.N.Y. 2014). "At that juncture, the court examines the evidentiary record to determine whether the 'opt-in' plaintiffs are, in fact, similarly situated to the named plaintiff." *Bifulco*, 262 F.R.D. at 212.

At the initial certification stage, courts do not require proof of an actual FLSA violation, but rather require the existence of a "factual nexus between the plaintiff's situation and the situation of other potential plaintiffs." *Sobczak v. AWL Indus., Inc.*, 540 F. Supp. 2d 354, 362 (E.D.N.Y. 2007); Neris v. R.J.D. Constr., Inc., 2019 U.S. Dist. LEXIS 56582.

It should be noted that even though the bar to certification is low, certification is not automatic. *See, DeSilva v N Shore-Long Is. Jewish Health System,* 27 F Supp. 3d 313, 317-18 (E.D.N.Y. 2014) (the fact that plaintiffs work or worked in a wide variety of departments at a vast array of locations and held a diverse collection of position was found to be antithetical to collective action treatment); *See also. Blaney v. Charlotte-Mecklenburg Hosp. Auth..* 2011 U.S. Dist. LEXIS 105302, 7 (W.D.N.C. Sept. 16, 2011) (denying certification where defendant established that many of the alleged common policies the plaintiffs complained of are actually left to the decentralized discretion of the individual units and their management staff). "The modest factual showing [conditional certification] cannot be satisfied simply by unsupported assertions." *Rosario v. Valentine Ave. Disc. Store, Co.*, 828 F. Supp. 2d 508 (E.D.N.Y. Nov. 2, 2011) (*quoting* Myers, 624 F.3d at 555).

Conclusory allegations are not sufficient to support a motion for conditional collective action certification. *Benavides v. Serenity Spa NY Inc.*, 166 F. Supp. 3d 474, 481 (2016). Plaintiffs must offer something of "evidentiary value" to demonstrate that similarly situated employees exist and, where plaintiffs "fail[ ] to meet this minimal requirement, their motion for [conditional collective action] certification [will be] denied." *Morales v. Plantworks, Inc.*, 2006

U.S. Dist. LEXIS 4267, *6 (2006), *see also Silva v. Calle 8, LLC*, 2013 U.S. Dist. LEXIS 171696, (E.D.N.Y. Dec. 5, 2013) ("where plaintiffs fail to provide either evidentiary support, such as affidavits or supporting documents, or specific factual allegations, courts routinely deny conditional certification").

Specifically, employees are not similarly situated when "[t]he jobs appear to involve markedly different pay scales, different hours and tasks, different overtime policies, and different compensation schemes." *Colon v. Major Perry St. Corp.*, 2013 U.S. Dist. LEXIS 93021, *21, 2013 WL 3328223 (S.D.N.Y. July 2013). This is because "[t]hese differences appear to be qualitative in nature, reaching the essentials of the job rather than the sorts of variations that bear on damages." *Id.* In *Colon*, the court ordered it was proper to certify a collective action for the superintendents. However, since Plaintiffs failed to establish that superintendents and handymen were subject to the same policy or that they share any sort of factual nexus, the court refused to granted conditional certification as to a class of superintendents, but refused to include the handymen and superintendents in the same class. *Id.*

Similarly, this Court has decided that "Plaintiff offers no support for his conclusory assertions that the same policies and practices applied to all non-managerial employee, regardless of department" when the affidavits and complaint provided by Plaintiffs failed to show "if the mechanic position fits into any of the departments with which Plaintiff is concerned or is otherwise similarly situated to Plaintiff's position as a driver," in that one added plaintiff has completely different job duties from Plaintiff and "described receiving a significantly higher weekly wage." *Wang v. Empire State Auto Corp.*, 2015 U.S. Dist. LEXIS 99089, *26. (E.D.N.Y. June 2015). In this case, the Court found that conditional certification is appropriate concerning the alleged failure

to pay overtime to *drivers*, but is not appropriate to all non-managerial employees. *Id.* Emphasis added.

Similar to what happened in *Colon* and *Wang*, the affidavits submitted by Plaintiff Xing in this matter involve "markedly different pay scales, different hours and tasks, different overtime policies, and different compensation schemes."

### 1. Plaintiff Liyou Xing's Affidavit

The Plaintiff Liyou Xing, alleged in his Affidavit that he first worked as a construction worker from September 05, 2016 to March 02, 2017, and as chef from March 03 to August 15, 2018 at Mayflower Hotel at 61-27 186th Street, Fresh Meadows, NY 11365. Affidavit of Plaintiff Liyou Xing ¶ ¶3,4. Mr. Xing claimed that he worked different hours during his employment with Defendants. Specifically, he worked 9:00 to 18:00 with one hour meal break for eight hours a day from September 5, 2016 to March 2, 2017; from 6:00 to 15:00 and from 10:00 to 20:00 for seven days a week for a total of 66.5 hours each week from March 3, 2017 to April 2, 2017; from 10:00 to 21:00 for six days a week for a total of 66 hours each week from June 1, 2017 to June 30, 2017; from 10:00 to 21:00 for seven days a week for a total of 77 hours each week from July 1, 2017 to August 31, 2017; from 11:00 to 23:00 for six days a week for a total of 72 hours each week. Affidavit of Liyou Xing ¶ ¶6-10.

From his affidavit, while Mr. Xing worked as a chef for Defendants, he was paid largely different hourly rates while he was serving the same position. Specifically he was paid "a flat compensation at a rate of twelve dollars ($12.00) per hour" from September 5, 2016 to March 30, 2017; then he was paid "a flat compensation at a rate of twenty-two dollars ($22.00) per hour" from March 31, 2017 to May 25, 2017, almost doubled immediately after the prior pay period; then his hourly rate was somehow downgraded to sixteen dollars ($16.00) per hour from May 26,

2017 to June 22, 2017; then his rate almost tripled compared to three months ago to thirty-five dollars ($35.20) from June 23, 2017 to June 30, 2017. Affidavit of Liyou Xing ¶ ¶13-16.

Pursuant to his allegation, Mr. Xing not only suffered from an unpredictable, capriciously-fluctuated hourly rates, but also a different compensation scheme after June 30, 2017. From his allegation, he was suddenly paid by a flat rate per month, although the monthly rate varied each month from July 1, 2017 to August 15, 2018. Affidavit of Liyou Xing ¶ ¶21-25. Mr. Xing also alleged that he did not have a fixed time for lunch or for dinner, and that he had 30 minutes to eat and that during lunch time he was on call. Affidavit of Liyou Xing ¶ ¶11,12.

### 2. Junhui Yan's Affidavit

Junhui Yan claimed that he worked as a mechanic and manager assistant for Defendants to work at Mayflower Hotel at 61-27 186th Street, Fresh Meadows, NY 11365 from August 24, 2016 to August 20, 2018, and was dispatched as mechanic and manager assistant of house department at Howard Johnson Hotel at 38-59 12th Street, Long Island City, NY 11101 from August 1, 2017 to August 20, 2017. Affidavit of Junhui Yan ¶¶ 3, 4.

For all the time he worked for Defendants, he alleged that he worked from 9:00 to 18:00 with one hour meal break for eight hours a day for five days a week and for a total of 40 hours each week. Affidavit of Junhui Yan ¶ 5. However, he "was required to work for 8 hours per day on every Saturday for about four weeks." Affidavit of Junhui Yan ¶ 6.

Pursuant to Mr. Yan, he was paid "a flat compensation at a rate of twelve dollars ($12) per hour" from August 24, 2016 to December 31, 2016, and was paid "a flat compensation at a rate of fifteen dollars ($15.00) per hour" from January 1, 2017 to August 20, 2018. Affidavit of Junhui Yan ¶¶ 7,8.

Then Junhui Yan alleged that he "was not paid for all hours worked at all relevant times" and "[a]t all relevant times, he [I] was not paid overtime pay for overtime work." Affidavit of Junhui Yan ¶¶ 9,10. It is not clear from Junhui Yan's affidavit alone to determine how he was underpaid by Defendants. Mr. Yan's affidavit is conclusory and vague. Firstly, he did not specify the dates of the alleged overtime four Saturdays. He just mentioned that they occurred during his two-year employment. Secondly, he didn't assert clearly which hours he was not paid. Thirdly, it is not stated clearly whether the alleged overtime Saturdays were paid at all, or were not paid at overtime rate.

### 3. Affidavit of Loi Wing Kit

Loi Wing Kit ("Kit") alleged that he worked as a construction worker at Howard Johnson Hotel at 38-59 12th Street, Long Island City, NY 11101 from August 1, 2014 to June 30, 2015 and as a construction worker and mechanic at Mayflower Hotel at 61-27 186th Street, Fresh Meadows, NY 11365 from July 3, 2015 to August 15, 2017. Affidavit of Kit ¶¶3,4.

He claimed that he worked from 9:00 to 18:00 with one hour meal break for eight hours a day, six days a week for a total of 48 hours each week from August 1, 2014 to June 30, 2015. Affidavit of Kit ¶ 4. Then he worked from 7:00 to 16:00 with one hour meal break for eight hours a day, six days week, with overtime for four hours a week for a total of 52 hours from July 3, 2015 to March 1, 2017. Affidavit of Kit ¶ 6. Kit then worked from 9:00 to 18:00 with one hour meal break for eight hours a day five days a week, in addition, he "need[ed] to work overtime for one (1) hours a week for a total of 41 hours each week" from March 2, 2017 to July 23, 2017. Affidavit of Kit ¶8.

Kit alleged that he "was not paid overtime pay for all the additional hours worked" from July 3, 2015 to March 1, 2017, "was not paid for all the hours worked above 40 hours per week"

7

from March 2, 2017 to July 23, 2017, and "[a]t all relevant times," he "was not paid overtime pay for overtime work. Affidavit of Kit ¶¶7, 9, 10. He also alleged that "[a]t all relevant times, [he] was paid a flat compensation at a rate of one hundred and sixty dollars ($160.00) per day. Affidavit of Kit ¶10.

So long as an employer complies with minimum wage and overtime laws, it does not violate the FLSA to pay someone a fixed amount for a fixed number of hours. *See* 29 C.F.R. § 778.109 ("The [FLSA] does not require employers to compensate employees on an hourly rate basis; their earnings may be determined on a piece-rate, salary, commission or other basis.") *Jin v. Shanghai Original, Inc.*, 2018 U.S. Dist. LEXIS 55829, *23 (2018). Here, Kit's affidavit alone does not show factual support for any violation of minimum wage and overtime laws. Kit did not specify the dates and time he had to work for the alleged four hours overtime per week from July 3, 2015 to March 1, 2017 and did not specify the dates and time for the alleged one hour overtime per week he had to work from March 2, 2017 to July 23, 2017. In other words, Kit did not explain the scheme that required him to work overtime: whether the overtime hour(s) was prorated among the work days, whether he needed to come to work on additional days, arrive earlier in the morning or get off later than usual on a specific day to work on the overtime hours.

In addition, Kit's allegation that "Defendants missed my payments to about three thousand and seven hundred dollars ($3,700.00)" was unsupported and unsubstantiated. Kit did not specify how he came to a calculation of $3,700.00 in total for his alleged missed payments.

### 4. Affidavit of Shuk C, Ng-Lam

Shuk C, Ng-Lam ("Lam") alleged that she worked as a housekeeper employed by Defendants at Mayflower Hotel at 61-27 186th Street, Fresh Meadows from August 1, 2016 to June January 31, 2018. Affidavit of Lam ¶3. Then she allegedly worked from 9:00 to 18:00 with one

hour meal break for eight hours a day, and she needed to work overtime for one hour per day for a total of 45 hours each week. Affidavit of Lam ¶4. Lam alleged that she was "paid a flat compensation at a rate of ten dollars ($10.00) per hour" from August 1, 2016 to March 31, 2017, was "paid a flat compensation at a rate of eleven dollars ($11.00) per hour from April 1, 2017 to September 31, 2017" and was "paid a flat hourly rate of thirteen dollars ($13.00) per hour." Affidavit of Lam ¶¶ 5, 6, 7.

Lam subsequently alleged that she "was not paid for all hours worked" without specifying the hours that she was not paid. Affidavit of Lam ¶ 8. And she further alleged that she was not paid "at least at one-and-half his promised hourly wage for all hours worked above forty (40) in each workweek. "Affidavit of Lam ¶11. Lam's affidavit is vague and conclusory in that she had to work for one hour overtime every day. She did not specify the exact time of the overtime hour and the exact hours she was paid each week.

From the Affidavits of Liyou Xing, Junhui Yan, Shuk C, Ng-Lam and Loi Wing Kit, it is clear that these alleged employees are not similarly situated at all. These affidavits are conclusory and vague in that although Plaintiff and Claimants alleged that suffered from "Defendants' widespread common policy of understating and underpaying their employees' overtime payment, and willfully paying less than minimum wages as required by the FLSA," the Claimants did not allege that they were paid less than minimum wages, nor did they state the specific way they were made or required to work more than 40 hours and the actual hours they were paid. In addition, even taking all allegations in Plaintiff and Claimants' affidavits as true, these alleged employees are similarly situated.

Firstly, their pay scales are totally different, Liyou Xing was once paid at an hourly rate of thirty-five dollars ($35.20), almost three times of the alleged hourly rates of Junhui Yan and Shuk

9

C, Ng-Lam. Secondly, their hours and tasks are unrelated. Third, the compensation schemes are also totally different, Liyou Xing was allegedly first paid by the hour, then by a flat monthly rate; Junhui Yan and Shuk C, Ng-Lam were allegedly paid by a flat hourly rate; and Loi Wing Kit was alleged paid by a flat rate of one hundred and sixty dollars ($160.00) per day. Last and the most important of all, these claimants allegedly suffer from tremendously different treatment from the same employer, Liyou Xing alleged that he did not have fixed time for lunch and that he was not paid overtime pay for overtime work "at all relevant times"; Junhui Yan claimed he somehow worked on four Saturdays, but failed to specify whether he was not paid for those Saturdays at all or was not paid the overtime pay; Shuk C, Ng-Lam claimed somehow she needed to work overtime for one hour per day, and did not specify the source of damage she suffered-whether she was not paid for the alleged one hour at all or was not paid by the overtime rate; and Loi Wing Kit only stated he was not paid for all hours worked "at all relevant times" without specifying which were the exact unpaid hours.

Simply put, from their allegations, these claimants seemed to travel in different tunnels during their alleged employment with Mayflower. The only similarity was that they all alleged that once they were employees of Mayflower. They are not similarly situated at all.

### B. The Documentary Evidence Proffered by Defendants Clearly Showed that Claimants' Allegations in Their Affidavits are Straightforwardly False

The wage statements of the Claimants and the wage agreement with Plaintiff Xing directly contradicted with pivotal allegations Claimants raised in their affidavits. Weihong Hu, the representative of corporate defendants has demonstrated in her declaration in detail that the bases of these claimants' claims are straightforwardly false. *See* Weihong Hu's Declaration in Opposition to Conditional Certification of Collective Action.

## II. THE PROPOSED NOTICE IS INAPPROPRIATE

10

### A. Production of Names and Personal Information of Potential Opt-In Plaintiffs

Plaintiff moves for the production of a Microsoft Excel data file containing contact information ("including but not limited to last known mailing addresses, last known telephone numbers, last known email addresses, last known WhatsApp, WeChat and/or FaceBook usernames, work location, dates of employment and position"). Such request violates employees' privacy rights.

Courts within this Circuit typically grant requests for the production of the names and last known addresses of potential opt-in plaintiffs when granting a motion for conditional certification as a collective action. *Cruz v. Lyn-Rog Inc.*, 754 F. Supp. 2d 521, 526. *Szu v. Tgi Friday's Inc.*, 2012 U.S. Dist. LEXIS 163595, *16 (E.D.N.Y. Nov 5, 2012) (This Court found the production of the names and last-known addresses of potential opt-in plaintiffs is sufficient). Mayflower Defendants consent to the production of the names and last known addresses of potential opt-in plaintiffs, but objects to the production of all other requested information. Plaintiffs have no need for the additional, inherently private information sought, including e-mail addresses, telephone number, social security numbers and dates of birth. *Colozzi v. St. Joseph's Hosp. Health Ctr.*, 595 F. Supp. 2d 200, 211. Plaintiff failed to establish why they request such an extensive list of information. In addition, since email addresses, WhatsApp, WeChat ID ad FaceBook Usernames are not a part of employment records kept by an employer, it would be a huge burden for an employer to locate the information, if possible at all.

### B. Scope of Class

If this court grants Plaintiffs' conditional certification of collective action, the scope of class should be the employees similarly situated with Plaintiff Liyou Xing. *See* Proposed Notice of Pendency and Consent to Join Lawsuit. As illustrated above, the Claimants who submitted

11

affidavits are/were not similarly situated. Plaintiff Liyou Xing alleged that he started working Wyndham Garden Fresh Meadows Flushing located at 61-27 186th Street, Fresh Meadows, NY 11365, as a construction worker from September 5, 2016 to March 2, 2017, and as a chef from March 3, 2017 to August 15, 2018. *See* Complaint ¶¶48, 49. Liyou Xing also alleged that he was assigned to "learn how to make breakfast" at 38-59 12th Street, Long Island City, NY 11101 from March 3, 2017 to March 6, 2017. *See* Complaint ¶50. Since Plaintiff Xing allegedly only received training for four days at 38-59 12th Street Hotel and never worked there, the scope of the class should not include employees at the 38-59 12th Street Hotel.

In addition, although Plaintiff alleged in the Complaint that "Defendants knowingly and willfully violated Plaintiff's and similarly situated Class Members' rights by failing to pay him minimum wages in the lawful amount for hours worked," Xing failed to point out the when and what time he was not paid the minimum wage. *See* Complaint ¶93. In fact, all the hourly rates cited by Xing in the Complaint-$12, $22, $16, $35.2-were above the minimum wage at the time such alleged hourly rates applied. Therefore, Xing failed to demonstrate any potential plaintiff who was not paid the minimum wage by Defendants.

Accordingly, the scope of the class should be employees similarly situated to Liyou Xing, "employees who work/worked at Wyndham Garden Fresh Meadows Flushing located at 61-27 186th Street, Fresh Meadows, NY 11365 first as a construction worker, and then as a chef."

### C. Appropriate Notice Period

Plaintiff requests a three-year notice period, timing from November 20, 2015 to present. Mayflower objects to the notice period and proposes that the notice period should be three years timing from the issuance from this notice. *See Anglada v. Linens 'N Things, Inc.*, No. 06 civ. 12901 (CM)(LMS), 2007 U.S. Dist. LEXIS 38918 (S.D.N.Y. May 29, 2007) ("the three year date from

the issuance of the notice is more in keeping with § 256(b)"); *Szu v. Tgi Friday's Inc.*, 2012 U.S. Dist. LEXIS 163595, *12 (E.D.N.Y. Nov 5, 2012).

### D.  Opt-in Period

Plaintiffs request a 90-day period to allow potential plaintiffs to submit their consent forms. Mayflower objects and proposes a 60-day period. As Courts in this district typically find 60-day opt-in periods sufficient, the Court approves a 60-day opt-in period. *See Bowens v. Atlantic Maint. Corp.*, 546 F. Supp. 2d 55, 85 (E.D.N.Y. 2008).

### E.  Submission of Consent Forms

Plaintiff proposes that opt-in plaintiffs should send the signed consent forms to Plaintiff's counsel. It is inappropriate to require opt-in plaintiffs to send their consent forms to plaintiff's counsel. Indeed, "[r]ecent cases in this district have suggested that such a procedure implicitly discourages opt-in plaintiffs from selecting other counsel." *Lujan v. Cabana Mgmt.*, 2011 U.S. Dist. LEXIS 9542, *44, 2011 WL 317984 (modifying plaintiffs' proposed notice to direct opt-in plaintiffs to send their consent forms to the court). Accordingly, we propose the notice of pendency directs opt-in plaintiffs to file their consent forms with the Clerk of Court. The Clerk of Court can electronically file the signed consent forms which notifies counsel for both sides that a plaintiff has opted-in.

### F.  Posting and Publication of the Notice of Pendency and Consent Forms

In its proposed order, Plaintiff requests the notice to be disseminated "in any relevant language, via mail, email, text message, or social media messages or chats, to all members of the collective." *See* Plaintiff's Proposed Order ¶2. In addition, Plaintiff requests the notice to be posted at three locations: 38-59 12th Street, Long Island City, NY 11101; 61-27 186th Street, Fresh Meadows, NY 11365 and 38-61 12th Street, Long Island City, NY 11101. *See* Plaintiff's Proposed

13

Order ¶4. Last, Plaintiff requests a variety of ways of publication of notice and imposed costs associated on Defendants. *See* Plaintiff's Proposed Order ¶¶14-22.

Mayflower objects to these baseless and harassing requests. First, as to the location of posting, Mayflower agrees to post notices at 61-27 186th Street, Fresh Meadows, NY 11365 and objects to the other two. Plaintiff did not establish any Plaintiff or claimants worked/works at 38-61 12th Street, Long Island City, NY 11101. As to 38-59 12th Street, Long Island City, NY 11101, Plaintiff and the claimants fail to establish that at the time they worked at 38-59 12th Street, Long Island City, NY 11101, they were underpaid, or this hotel has "a common policy or law that violated the law." Secondly, while Mayflower agrees that Plaintiff sends the notice through first-class mail, Mayflower objects to all other requests. Posting the notice is a reasonable means of assuaging the vagaries of notice by mail, and would not unduly burden the defendants. *Enriquez v. Cherry Hill Mkt. Corp.*, 2012 U.S. Dist. LEXIS 17036, *1, 2012 WL 440691; *see Hamadou v. Hess Corp.,* 915 F. Supp. 2d 651, 669 (approving request to post notice).

While Mayflower would like to make good faith effort to produce the names and last-known addresses of current and past employees, it is unfair and burdensome for Mayflower to pay for the associated costs in the scenarios provided by Plaintiff. In addition, sending the notice through social media along with posting and first-class mails would violate the employees' privacy.

### G. Equitable Tolling of Statute of Limitations

Plaintiffs request this court to toll the FLSA's three-year statute of limitation for 90 days until the expiration of the opt-in period. Mayflower respectfully requests this court to deny Plaintiff's such request. *Zhenkai Sun v. Sushi Fussion Express, Inc.*, 2018 U.S. Dist. LEXIS 37515, *27 (E.D.N.Y. Jan 2, 2018), *see Wang v. Empire State Auto Corp.*, 2015 U.S. Dist. LEXIS 99089

(E.D.N.Y. July 29, 2015) (denying the plaintiff's motion for equitable tolling finding "plaintiff's application is premature; in that the Court will not speculate as to the effect of defendants' actions on opt-in plaintiffs who have not, as of yet, appeared, and whose knowledge of their rights at the time of any violations is unknown.").

## CONCLUSION

Based on the foregoing, it is respectfully submitted that Plaintiff is not entitled to the relief sought in their motion for the following reasons:

A. Plaintiff is not entitled to certification of the proposed collective class because it disregards the requirement that the members be similarly situated;

B. Alternatively, if this Court grants Plaintiff's motion for collective action, the proposed scope of class should be employees working/worked at Wyndham Garden Fresh Meadows Flushing first as a construction worker and then as a chef, along with other proposed changes demonstrated in this memorandum and the Proposed Notice of Pendency and Consent to Join Lawsuit.

C. If this Court orders disclosure of contact information for notice to potential opt-ins, such disclosure should be limited to the employees' names and last-known addresses.

Respectfully Submitted,


Dated: Queens, New York
       June 3, 2019

                                     KEVIN KERVENG TUNG, P.C.

                                /s/ Kevin Tung
By: Kevin Tung, Esq.
Queens Crossing Business Center
136-20 38th Avenue, 3D
Flushing, New York 11354
(718) 939-4633
*Attorneys for Defendants*
MAYFLOWER INTERNATIONAL
HOTEL GROUP INC; MAYFLOWER
BUSINESS GROUP, LLC; MAYFLOWER
INN CORPORATION;
MAYFLOWER WENYU LLC;
YAN ZHI HOTEL MANAGEMENT INC.;
MAYFLOWER 1-1 LLC;
WEI HONG HU and XIAOZHUANG GE