# TROY LAW, PLLC
ATTORNEYS / COUNSELORS AT LAW
Tel: (718) 762-1324   troylaw@troypllc.com   Fax: (718) 762-1342
41-25 Kissena Boulevard, Suite 119, Flushing, NY 11355

July 15, 2019

**Via ECF**
Hon. Lois Bloom, U.S.M.J.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: **Supplemental Submission in Support of Plaintiff's Collective Certification Motion**
1:18-cv-06616-PKC-LB *Xing v. Mayflower International Hotel Group Inc. et al*

Dear Honorable Judge Bloom:

This office represent the Plaintiffs in the above-referenced matter. We write respectfully to address the Court's concerns raised at the July 11, 2019 hearing regarding: 1) deficiencies in Defendants' record-keeping as to the Plaintiff and as to the other affiants in support of Plaintiff's motion for conditional collective certification; 2) whether the collective period ought to extend back three years from the filing of the Complaint or three years from the date of the Court's order certifying the collective; and 3) revisions to the collective notice and proposed publication order.

**Wage and Time Records**

**Liyou Xing**

Defendants produced as part of their initial disclosures 24 pages (Bates-indexed M000001–M000024) of Mr. Xing's time reports covering portions of the period March 1, 2017 through August 23, 2018, and 42 pages (Bates-indexed M000025–M000066) of Mr. Xing's earnings statements covering the period from September 3, 2016 through August 31, 2018. These documents are attached hereto as Exhibits 1 and 2 respectively.

The discrepancies between Mr. Xing's time reports and his earning statements, and the deficiencies therein, are numerous. First, Defendants have failed to produce any time records corresponding to Mr. Xing's earnings statements for the period before March 1, 2017. During that period before March 1, 2017, Mr. Xing's earnings statements purport to show that he was paid at an hourly rate for hours worked over a two-week pay period. However, the earnings statements do not demarcate between the two weeks worked in the pay period. For instance, for the period October 1, 2016 through October 14, 2016, Mr. Xing's earnings statement purports to show that he worked 80.00 hours over 2 weeks, but does not state whether he worked 40.00 hours both weeks or some other combination of hours which would have put one of the weeks over 40.00 hours and thus entitled Mr. Xing to overtime.

This is suspicious, as from October 1, 2016 through March 29, 2017 (after which the two-week earning statements are replaced by one-week earning statements), Mr. Xing is recorded on

Hon. Lois Bloom, U.S.M.J.
July 15, 2019
1:18-cv-06616-PKC-LB *Xing v. Mayflower International Hotel Group Inc. et al*
Page 2 of 5

the earning statements as working exactly 80.00 hours of straight-time every two weeks, and no hours of overtime. This is contradicted by Mr. Xing's time records. For instance, in the period March 3, 2017 through March 9, 2017, Mr. Xing is recorded on his time records as working 62.87 hours: 40.00 hours of straight-time and 22.87 hours of overtime. In the two-week earning statement that includes this period, from March 3, 2017 through March 16, 2017, Mr. Xing is recorded to have worked 80 hours of straight-time and 0.00 hours of overtime. He was not recorded in his time records to have worked any time the week of March 10, 2017 through March 16, 2017.

There are numerous similar discrepancies later in the records. The week of May 5, 2017 through May 12, 2017, Mr. Xing was recorded to have worked 49.20 hours, 40.00 hours of straight-time and 9.20 hours of overtime. His earnings statement, however, only shows him being paid for 40.00 hours of straight-time. The week of June 9, 2017 through June 15, 2017, Mr. Xing was recorded as having worked 41.73 hours, 40.00 hours of straight-time and 1.73 hours of overtime, but only being paid for 40.00 hours of straight-time. The week of July 16, 2017 through July 22, 2017, Mr. Xing is recorded as working 25.55 hours, but only being paid for 24.00 hours of work.

Throughout the entire period discussed above, Mr. Xing's time records are spotty, with many weeks having no corresponding time records at all. Following June 29, 2017, Mr. Xing's time records become much more complete, and indeed show him working over 60.00 hours each week until his last week in August 2018. But he transitions to a monthly salary. For July and September 2017, he was paid $3696.00; for August 2017, he was paid $4,048.00, for August 2018 he was paid $3,276.31; and for October 2017 through July 2018 he was paid $3,872.00. His earning statements for the period July 2017 through August 2018 do not record his hours worked, or give any basis for his monthly payments. At no time was he paid at a rate of $3,640.00 per month. *C.f.* Dkt. No. 36-2.

The "employee salary increase request" filed at Dkt. No. 36-2 is rife with problems of its own. It is near-exclusively in English, and is not translated line-by-line. The monthly pay rate $3,640.00 appears (to the English-literate reader) to be based on a calculation of $13.00 for 160 hours of straight-time per month and $19.50 times 80 hours of straight-time per month. The presumed number of hours per month seem to presume 4 weeks per month when in fact there are 4-1/3 weeks per month, and a 60-hour week when in fact Mr. Xing worked well in excess of 60.00 hours per week throughout this period. It is also in no way a substitute for a wage notice under NYLL § 195.1, as it doesn't contain a statement of allowances taken or a statement of payday. *C.f.* Dkt. No. 36-1.

On May 6, 2017, and almost every day after July 5, 2017, Mr. Xing worked a spread of greater than 10 hours, but his earning statements do not record him as having been paid spread-of-time pay.

In summary, Defendants' records as to Mr. Xing are rife with deficiencies and self-contradictions, and cast doubt on Defendants' entire record-keeping operation.

**Junhui Yan**

Defendants have produced no documents to Plaintiff regarding Mr. Yan. Rather, they filed Mr. Yan's earning statements directly to the docket at Dkt. No. 36-3, and Plaintiff's counsel saw them for the first time shortly thereafter. Defense counsel was apprised of the deficiencies and self-contradictions in Mr. Xing's records in the context of settlement discussions by Plaintiff's counsel, and tellingly, they filed no time records for Mr. Yan with which to compare the earning statements.

Even though Defendants did not produce time records with which to compare the earning statements, the earning statements themselves show that Mr. Yan was not paid properly. For instance, the week of June 29, 2018, Mr. Yan was purportedly paid for 48.00 hours of work all at his straight-time rate of $15.00 per hour. He was not paid at his overtime rate of $22.50 per hour for his 8.00 hours of overtime work, and as such was underpaid for that week by $60.00.

While the Court is not to make credibility determinations at this stage of the litigation, broadly speaking, Defendants' earning statements do not contradict Mr. Yan's testimony. Mr. Yan's claim was that he worked 8 hours of overtime per week, about 4 weeks out of his employment. According to Defendants' earning statements Mr. Yan was paid some amount of overtime for the weeks beginning:

1. October 14, 2016 and/or October 21, 2016 (total 17.50 hours)[1];
2. November 11, 2016 and/or November 18, 2016 (total 16.50 hours);
3. November 25, 2016 and/or December 2, 2016 (total 16.00 hours);
4. March 3, 2017 and/or March 10, 2017 (total 8 hours);
5. March 17, 2017 and/or March 24, 2017 (total 39.75 hours!);
6. July 14, 2017 (2.00 hours);
7. July 28, 2017 (2.00 hours);
8. September 22, 2017 (2.50 hours);
9. January 12, 2018 (3.00 hours); and
10. June 1, 2018 (4.00 hours).

These weeks do not include the week beginning June 29, 2018, when Mr. Yan was recorded as working overtime but not as being paid overtime.

In no particular week, other than the week beginning June 29, 2018, was Mr. Yan recorded as working the 8.00 hours of overtime he claims he worked. Dividing the amounts of overtime worked in the two-week periods beginning October 14, 2016, November 11, 2016, and November 25, 2016 by 2 gives between 8.00 and 9.00 hours of overtime worked each of those 6 weeks, but in the absence of specific time records showing in which particular weeks Mr. Yan worked overtime, this is not an inference the Court can draw. As such, Mr. Yan's statement that he worked some overtime hours for which he wasn't paid, or wasn't paid overtime, is not contradicted by Defendants' earning statements.

---

[1] Until the week beginning March 31, 2017, Mr. Yan's earning statements cover two-week periods and do not differentiate between hours worked in the first and hours worked in the second week, in the same way as Mr. Xing's earning statements do up until that same period.

Hon. Lois Bloom, U.S.M.J.
July 15, 2019
1:18-cv-06616-PKC-LB *Xing v. Mayflower International Hotel Group Inc. et al*
Page 4 of 5

Finally, Defendants' earning statements for Mr. Yan support Plaintiff's contention that Defendants' locations operated as a single enterprise. Mr. Yan testified that he worked at the 186th Street location, but for the year 2016 he was apparently paid by Yan Zhi Hotel Management Inc., which has its address at the 12th Street location.

### **Shuk C Ng-Lam**

Like with respect to Mr. Yan, Defendants produced no documents to Plaintiffs regarding Ms Ng-Lam other than filing her earnings reports on the docket at Dkt. No. 36-4. Like Mr. Yan, Ms Ng-Lam was employed at 186th Street but paid at first by a company at 12th Street, Mayflower International Hotel Group. Like both Mr. Wang and Mr. Yan, until March 31, 2017 Ms Ng-Lam's earnings statements cover two-week periods and do not differentiate between her time worked over those two weeks, and thus may hide overtime worked in one week by recording it in the other. At no time do her earning statements record her working the 45.00 hours per week she swore to working. The most she is ever recorded as working is 42.00 hours the week beginning April 7, 2017. She is recorded as working 90.00 hours the two-week period beginning March 3, 2017 and 88.00 hours the two-week period beginning November 26, 2016, but for the reasons stated with respect to Mr. Yan, it is not so neat as assuming she worked 45.00 hours two weeks and 44.00 hours the other two.

The week beginning July 14, 2017, Ms Ng-Lam was paid a so-called "bonus" of $13.00. The reason for this bonus is not explained. Ms Ng-Lam had been paid bonuses before: $80.00 for the two-week period beginning December 10, 2016 (albeit styled as a "commission"); $120.00 for the two-week period beginning January 20, 2017; and $104.00 for the week beginning April 7, 2017. The $13.00 "bonus" is about one tenth the size of the others and is moreover equal to her hourly wage for that period. It can't be a spread-of-hours payment as that would be equal to one hour's worth of the applicable minimum wage, which in 2017 was $11.00 for large New York City employers and smaller for every other category of employer. It is likely that this "bonus" represents an hour of overtime work paid at the straight-time rate.

### **Kit**

No documents whatsoever have been produced with respect to Mr. Kit, either to Plaintiff directly or by filing on the docket.

### **Time Frame for Conditional Certification**

Courts have frequently granted collective periods extending back three years from the filing of the complaint. *See, e.g.*, *Alvarado v. GC Dealer Servs.*, No. 18-cv-02915 (SJF) (SIL), 2018 U.S. Dist. LEXIS 202489, at *12, n.3 (E.D.N.Y. Nov. 29, 2018) (citing *Cabrera v. Stephens*, No. 16-cv-03234 (ADS) (SIL), 2017 U.S. Dist. LEXIS 160044, at *20 (E.D.N.Y. Sept. 28, 2017) and *Sexton v. Franklin First Fin. Ltd.*, No. 08-cv-04950 (JFB) (ARL), 2009 U.S. Dist. LEXIS 50526, at *34 (E.D.N.Y. June 16, 2009)). They do so "[o]ut of an abundance of caution, and seeking to avoid any merit-based determinations" at the time of conditional collective certification, and because "[s]pecific challenges to the timeliness of the claims of certain opt-in plaintiffs or the

4

Hon. Lois Bloom, U.S.M.J.
July 15, 2019
1:18-cv-06616-PKC-LB *Xing v. Mayflower International Hotel Group Inc. et al*
Page 5 of 5

named Plaintiff can be addressed after the completion of discovery during the second phase of the collective action certification process." *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 323 (S.D.N.Y. 2007) (internal quotation marks and citations omitted); *see also Robles v. Liberty Rest. Supply*, No. 12-cv-05021 (FB) (VMS), 2013 U.S. Dist. LEXIS 177922, at *28 (E.D.N.Y. Dec. 18, 2013); *Thompson v. World Alliance Fin. Corp.*, No. 08-cv-04951, 2010 U.S. Dist. LEXIS 85912, at *23 (E.D.N.Y. Aug. 20, 2010); *Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397, 410 (S.D.N.Y. 2012); *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 451 (S.D.N.Y. 2011).

### **Collective Notice**

A revised collective notice and publication order will be emailed to Chambers in .docx format.

We thank the Court for its attention to and consideration of this matter.

Respectfully submitted,
TROY LAW, PLLC

/s/ Aaron Schweitzer
Aaron B. Schweitzer
*Attorney for Plaintiffs*

cc: via ECF
   all counsel of record