UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
LIYOU XING, YUANYUAN DUAN,
HUALIANG LI, WINGKIT LOI, SHUK C
NG-LAM, JUNHUI YAN, JUNHUA YU, *on
behalf of themselves and of a collective and of
a class of others similarly situated,* and
AMANDA LIU, *on behalf of herself and a
class of others similarly situated,*

                             Plaintiffs,

                - against -

MAYFLOWER INTERNATIONAL HOTEL,
GROUP INC d/b/a/ Howard Johnson Hotel,
MAYFLOWER BUSINESS GROUP, LLC
d/b/a Mayflower Hotel d/b/a Wyndham Garden,
MAYFLOWER INN CORPORATION d/b/a
Howard Johnson Hotel, MAYFLOWER
WENYU LLC d/b/a Mayflower Hotel d/b/a
Wyndham Garden, YAN ZHI HOTEL
MANAGEMENT INC. d/b/a Howard Johnson
Hotel, MAYFLOWER 1-1 LLC d/b/a Howard
Johnson Hotel, YUEHUA HU, WEI HONG
HU a/k/a Weihong Hu, and XIAOZHUANG
GE,

                           Defendants.
----------------------------------------------------------x

**MEMORANDUM & ORDER**
18-CV-6616 (PKC) (LB)

PAMELA K. CHEN, United States District Judge:

       Plaintiff Liyou Xing, Hualiang Li, Wingkit Loi, Junhua Yu, and Amanda Liu (collectively, "Plaintiffs")[1] bring this action against Defendants Mayflower International Hotel Group Inc., Mayflower Business Group, LLC, Mayflower Inn Corporation, Mayflower Wenyu LLC, Yan Zhi Hotel Management Inc., Mayflower 1-1 LLC, Wei Hong Hu, and Xiaozhuang Ge (collectively,

---

[1] YuanYuan Duan, Shuk C Ng-Lam, and Junhui Yan have been dismissed from this action. (*See* 09/20/21 Docket Order.)

"Defendants")[2], alleging violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). Before the Court is Defendants' motion for partial summary judgment. For the reasons stated below, Defendants' motion is granted in part and denied in part.

## BACKGROUND

### I. Relevant Facts[3]

#### A. Defendants

Defendants Mayflower International Hotel Group ("MIHG"), Mayflower Inn Corporation ("Mayflower Inn"), Yan Zhi Hotel Management, Inc. ("Yan Zhi") and Mayflower 1-1 LLC ("Mayflower 1-1") are corporations doing business as Howard Johnson Hotel. (Amended Complaint ("Am. Compl."), Dkt. 59, ¶¶ 21, 23, 25, 26.) MIHG, Yan Zhi, and Mayflower 1-1 share the same principal place of business, located at 38-61 12th Street in Long Island City. (Defendants' Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 ("Defs. 56.1"), Dkt. 93, ¶¶ 1, 8–9.) The record does not state where the Mayflower Inn's principal place of business is, but its designated process agent's address is 38-59 12th Street in Long Island City, *i.e.*, next door to the three other aforementioned corporate defendants. (*Id.* ¶ 5.) The Howard Johnson Hotel is located

---

[2] Someone identified as "Yuehua Hu" is also named as a defendant in this action and is currently listed in the docket as being *pro se*. However, it appears from Plaintiff Liyou Xing's deposition testimony that "Yuehua Hu" is the same person as "Wei Hong Hu." (Deposition of Liyou Xing, Dkt. 104-44, at 98–100.) Therefore, the Court treats them as the same person for purposes of this motion.

[3] The purpose of Local Rule 56.1 "is to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001), *abrogated on other grounds by Gross v. FBL Fin. Servs.*, 557 U.S. 167 (2009). Neither party has met its obligations under this rule. Nevertheless, the Court attempts to describe the relevant facts as best as can be gleaned from its own review of the record. Unless otherwise noted, a standalone citation to Defendants' 56.1 Statement denotes that this Court has deemed the underlying factual allegation undisputed. Any citations to Defendants' 56.1 Statement incorporates by reference the documents cited therein. Where relevant, however, the Court may cite directly to the underlying document.

2

at the same address as the Mayflower Inn, which is 38-59 12th Street, Long Island City. (*Id.* ¶ 6.) The record does not reflect who (or what entity) owns the Howard Johnson Hotel.[4]

Defendants Mayflower Business Group ("MBG") and Mayflower Wenyu LLC ("Wenyu") are corporations doing business as the Mayflower Hotel (also known as the Wyndham Garden Hotel). (*Id.* ¶¶ 3, 22, 24.) They share the same principal place of business, located at 61-27 186th Street in Long Island City. (*Id.* ¶¶ 2, 7.) The Mayflower Hotel is also located at the same address. (*Id.* ¶ 3.) The record does not reflect who (or what entity) owns the Mayflower Hotel.[5]

Defendant Wei Hong Hu ("Hu") owns 50% of MBG and is a shareholder of Yan Zhi, MIHG, Wenyu, and Mayflower 1-1. (*Id.* ¶ 10; *see also* Deposition of Wei Hong Hu ("Hu Dep."), Dkt. 104-38, at 11–12.) She appears to own another hotel at 38-58 12th Street (the "Unnamed Hotel") in Long Island City, which is "across the street" from the Howard Johnson. (Hu Dep., at 14–15.) She and her husband, Defendant Xiaozhuang Ge ("Ge"), reside at the same address as MBG and Wenyu, *i.e.*, 61-27 186th Street, Long Island City (*id.* at 10-11), where "all of [her] groups, organizations, management, executives, [and] finance department people" are located (Hu Dep., at 10–11; *see also* Deposition of Xiaozhuang Ge ("Ge Dep."), Dkt. 104-39, at 7). Defendant Ge appears to own the other half of MBG, and he does not recall if he is a shareholder of the other

---

[4] The Court notes that although MIHG, Mayflower Inn, Yan Zhi, and Mayflower 1-1 are doing business as Howard Johnson, this does not constitute evidence of ownership of that business. *See Hutson v. Notorious B.I.G., LLC*, No. 14-CV-2307 (RJS), 2015 WL 9450623, at *5 (S.D.N.Y. Dec. 22, 2015) ("[M]erely alleging that [a party] does business as a company is insufficient to demonstrate that [party] and the company should be treated as the same entity." (internal quotation marks omitted)).

[5] As previously indicated, the fact that MBG and Wenyu are doing business as the Mayflower Hotel does not constitute evidence of ownership. *Hutson*, 2015 WL 9450623, at *5.

Corporate Defendants.[6]  (Ge Dep., at 9–12.)  He has not worked since 2017 due to illness.  (*Id.* at 7–8.)

Incredibly, neither of the Individual Defendants—despite being owners and shareholders of the Corporate Defendants—seem to know what the function of the Corporate Defendants is or what they themselves do in connection with the Corporate Defendants.[7]

First, with respect to MBG, Hu initially testified that MBG operates, among others, the Howard Johnson Hotel and the Mayflower Hotel.  However, she later testified that MBG has "no relationship" with the Howard Johnson Hotel and, instead, is only the developer and owner of "the property" located at 61-27 186th Street.  (Hu Dep., at 14–15, 17, 19.)  It is unclear what "property" she is referring to, but it is presumably the Mayflower Hotel.  Hu alleges that she has hiring authority at MBG, but does not know if she has firing authority.  (*Id.* 44–46.)  She further states that managers determine the salaries of MBG employees and set their schedules; however, she determines the managers' salaries, but is not sure if she sets their schedules.  (*Id.* at 46–47.)  She does not recall whether MBG maintains employee time and wage records.  (*Id.* at 47–48.)

Second, with respect to Yan Zhi, Hu testified that Yan Zhi is the entity that "manages the executives" at some of the hotels she owns, but she did not recall which ones.  (*Id.* at 28–29.)  Hu's testimony suggests that the employees of Yan Zhi are the hotel executives and managers, but she

---

[6] Hereinafter, the Court refers to Defendants Mayflower International Hotel Group Inc., Mayflower Business Group, LLC, Mayflower Inn Corporation, Mayflower Wenyu LLC, Yan Zhi Hotel Management Inc., and Mayflower 1-1 LLC, collectively, as the "Corporate Defendants," and Defendants Wei Hong Hu and Xiaozhuang Ge, collectively, as the "Individual Defendants."

[7] Despite their lack of recollection, Hu alleges that "[o]f all the companies, generally speaking I was not managing, because each one of the entities have its own management or manager." (Hu Dep., at 27.)  Similarly, Ge testified, "I have never participated in managing the hotel.  Never."  (Ge Dep., at 8, 13.)  These statements "amount to nothing more than legal conclusions," and self-serving ones at that, upon which the Court cannot rely. *Elliott v. Donegan*, 2022 WL 992527, at *4 (E.D.N.Y. Mar. 31, 2022).

also testified that she does not recall whether Yan Zhi has employees other than the managers and executives. (*Id.*) Hu does not recall what her role is at Yan Zhi, but she does distribute salaries "to basically the executives or management." (*Id.* at 25, 27–28.) She does not recall whether she has hiring or firing authority with respect to Yan Zhi employees or whether she has ever set those employees' work schedules or salaries, and she does not know who maintains Yan Zhi's time and pay records. (*Id.* at 29, 49–53.)

Third, with respect to MIHG, Hu "isn't sure" what work she does at MIHG or if she has hiring or firing authority. (*Id.* at 33–34, 53, 55.) MIHG employs managers who "do work related to the hotel, managing of the hotel," but she does not recall which hotels they manage. (*Id.* at 32–33.) The managers also determine employee wage rates, but she does not know who gave them that authority. She also does not know who sets the MIHG employees' schedules or who maintains their time and wage records. (*Id.* at 54–55.)

Fourth, with respect to Wenyu, according to Hu, it too does "hotel management," but Hu cannot recall what hotels they manage. (*Id.* at 41–42.) She also does not know who is in charge of operating Wenyu, who has hiring and/or firing authority, who determines the employees' salaries there, or who maintains the Wenyu employees' time and wage records (including whether she herself does). (*Id.* at 42, 55–56.)

Finally, with respect to Mayflower 1-1, Hu does not recall what the company does, who is in charge of managing it, who has hiring and/or firing authority, who sets employee salaries and schedules, or who maintains their time and wage records. (*Id.* at 43, 56–57.)

Ge did not testify as to his role at any of the Corporate Defendants. Rather, he stated that

5

he did not play a management role at the Howard Johnson Hotel,[8] and with respect to the hotel's employees, did not participate in hiring or firing, or setting work schedules. (Gu Dep., 17–19.) Hu did not recall if he was involved in keeping time and wage records. (Gu Dep., 19.)

### B. Plaintiffs

**Plaintiff Liyou Xing** began working as a "miscellaneous worker" at the Mayflower Hotel construction site on September 5, 2016. (Deposition of Liyou Xing ("Xing Dep."), Dkts. 102-1 & 104-44, at 32, 39.) He was hired by two managers, "Ah Mei" and "He Li." (*Id.* at 38.) From March 2, 2017 to August 15, 2018, Xing worked as a chef at the Mayflower Hotel which was, by then, operational. (*Id.* at 54.) His "bosses" were Defendants Hu and Ge. (*Id.* at 57, 100.) Neither Hu nor Ge supervised Xing's work or set his schedule, but both set his compensation. (*Id.* at 100–01; *see also* Dkt. 104-5, at 1 (Xing's Notice and Acknowledgement of Pay Rate form showing his employers as "Weihong Hu . . . d/b/a . . . Mayflower Wenyu LLC").) According to Defendants' records, Xing received earnings statements and W-2s from Defendants MIHG, Yan Zhi, and Wenyu during his employment. (Dkt. 104-5, at 20–75; Dkt. 104-14; Dkt. 104-6, at 44–46.)

**Plaintiff Hualiang Li** worked as a cook at the Mayflower Hotel from March 2017 to May 2017. (Deposition of Hualiang Li ("Li Dep."), Dkt. 104-41, at 19–22.) He was hired and supervised by a manager named "Mei." (*Id.* at 20–21, 26.) He was also supervised by "Ms. Hu"—who appears to be Defendant Wei Hong Hu—as she would "sometimes" instruct him on what to do. (*Id.* at 26–27 ("[S]he would tell me . . . I want you to go and take care of something.").) According to Defendants' records, Li received earnings statements and W-2s from Defendant Wenyu during his employment. (Dkt. 104-6, at 49; Dkt. 104-22, at 2–16.)

---

[8] It is not clear to the Court whether this means Ge did not manage the physical hotel itself or the Corporate Defendants "doing business as" Howard Johnson.

6

**Plaintiff Junhua Yu** began working at the Wyndham Garden Hotel/the Mayflower Hotel in September 2017. (Deposition of Junhua Yu ("Yu Dep."), Dkt. 104-42, at 19–21.) He was hired by a manager (only identified by her surname "Liu") as a housekeeper and, on an as-needed basis, in the maintenance department. (*Id.* at 23–24, 26.) After "Manager Liu" left the company, Yu reported to "Boss Hu." (*Id.* at 45–46.) It is not clear from the record who "Boss Hu" is, although the parties seem to assume it is Defendant Hu. At some point, Hu "raised [Yu's] hourly wages" to $17 per hour, but she did not set Yu's work schedule. (*Id.* at 41, 46–47.)

On August 3, 2018, Yu began working at the Howard Johnson Hotel either because "[his] manager for unknown reason, for strange reason, the manager told me to go there and work there" (*id.* at 1, 35) or because Defendant Hu "told [him] to go there" (*id.* at 50). There, he reported to a manager and her assistant. (*Id.* at 52.) His salary decreased by $3 per hour (to $14 per hour) when he moved to the Howard Johnson. (*Id.* at 61–62.) According to Yu, he went "to the accountant at the Howard Johnson [to complain about the pay reduction]. And accountant at Howard Johnson said, well, I have nothing to do with it. So I went to the Wyndham Garden accountant. And accountant told me, well, your wages was decided by Boss Hu." (*Id.*) "Boss Hu" appears to be Defendant Hu, but, again, it is not clear from the record. While working at the Howard Johnson Hotel for "several days each month," Yu was sent to work at the Unnamed Hotel owned by Hu. (*Id.* at 67–68; *see also id.* at 68 ("Well, the assistant manager, right, each morning or, you know, the start of our shift would give us a form to write down, okay, today you're working at Howard Johnson Hotel or the hotel opposite from Howard Johnson.").) Yu stopped working for Defendants in January 2019. (*Id.* at 51.) According to Defendants' records, Yu received earnings statements and W-2s from Defendants MIHG and Wenyu during his employment. (Dkt. 104-6, at 63–73; Dkt. 104-21, at 27–30, 92–95, 97.)

7

**Plaintiff Amanda Liu** began working as a laborer at the Mayflower Hotel construction site on September 6, 2016. (Deposition of Amanda Liu ("Liu Dep."), Dkt. 104-40, at 20.) She was hired by a manager named "Mae" and Mae "gave out the orders" to Liu during her employment by Defendants. (*Id.* at 21, 25–26.) At some point, Liu's work shifted to housekeeping. (*Id.* at 22–23.) On three occasions while working in housekeeping, Defendant Hu "want[ed] [Liu] to clean [Hu's] home in Long Island" and would "drive [Liu] to her home to do the cleaning." (*Id*. at 24–26, 32–34.) Liu describes Hu as her "female boss," but that Hu "don't talk to us." (*Id.* at 26.) Liu ceased working for Defendants in March 2017. (*Id.* at 55.) According to Defendants' records, Liu received earnings statements from MIHG as well as W-2s from MIHG and Wenyu during the course of her employment. (Dkt. 104-16, 1–22; Dkt. 104-31, at 27–31.)

**Plaintiff Wingkit Loi** began working as a construction worker at the Howard Johnson Hotel on August 1, 2014. (Deposition of Wingkit Loi ("Loi Dep."), Dkt. 104-43, at 31–32.) In this role, he "would do some electrical wiring and also . . . installing lights and also sometimes do some painting." (*Id.* at 32–33.) On June 30, 2015, Defendant Hu transferred Loi from the Howard Johnson Hotel to work at the Mayflower Hotel. (*Id.* at 43 ("[I]t was a Friday, and Boss Hu told me, 'Okay, Monday, come in Monday, you're going to go to work at Mayflower.'").) At the Mayflower Hotel, Loi initially did construction work and then, in March 2017, switched to doing maintenance and repair work. (*Id.* at 52.) Loi ceased working for Defendants in July 2017. (*Id.* at 56.) Defendants' records do not contain any employment or pay information about Loi, but Loi alleges that Defendants Hu and Ge personally paid him (in cash and by check). (*Id.* at 11–12, 40–41, 45–46, 59–60.)

## II.     Procedural History

On November 20, 2018, Plaintiff Liyou Xing filed his initial complaint in this matter,

8

alleging violations of the FLSA and NYLL.  (Dkt. 1.)  On April 27, 2020, the complaint was amended to add, *inter alia*, Hualiang Li, Wingkit Loi, Junhua Yu, and Amanda Liu as Plaintiffs. (Dkt. 59.)  Defendants' motion for partial summary judgment was fully briefed on October 27, 2021.  (Dkt. 90.)

## STANDARD OF REVIEW

Summary judgment is appropriate where the submissions of the parties, taken together, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986) (The summary judgment inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.").  "A fact is material if it 'might affect the outcome of the suit under the governing law.'"  *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 13 F.4th 247, 259 (2d Cir. 2021) (quoting *Anderson*, 477 U.S. at 248).  "To present a 'genuine' issue of material fact sufficient to defeat a motion for summary judgment, the record must contain contradictory evidence 'such that a reasonable jury could return a verdict for the nonmoving party.'"  *Horror Inc. v. Miller*, 15 F.4th 232, 241 (2d Cir. 2021) (quoting *Anderson*, 477 U.S. at 248).

"The moving party bears the burden to demonstrate the absence of any genuine issues of material fact . . . ."  *New York v. Mountain Tobacco Co.*, 942 F.3d 536, 541 (2d Cir. 2019).  Once this burden is met, the burden shifts to the nonmoving party to proffer some evidence establishing the existence of a question of material fact that must be resolved at trial.  *See Spinelli v. City of New York*, 579 F.3d 160, 166–67 (2d Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  A mere "scintilla of evidence" in support of the nonmoving party is insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]."  *Anderson*,

477 U.S. at 252; *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 143 (2d Cir. 2013).  That is, "the nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted); *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007).

"[A]t the summary judgment stage, the district court is not permitted to make credibility determinations or weigh the evidence . . . ."  *Kee v. City of New York*, 12 F.4th 150, 166 (2d Cir. 2021).  It must "consider the record in the light most favorable to the non-movant" and "resolve all ambiguities and draw all factual inferences in favor of the non-movant 'if there is a "genuine" dispute as to those facts.'"  *Loreley*, 13 F.4th at 259 (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).  "[T]he district court may not properly consider the record in piecemeal fashion; rather, it must 'review all of the evidence in the record.'"  *S. Katzman Produce Inc. v. Yadid*, 999 F.3d 867, 877 (2d Cir. 2021) (quoting *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150 (2000)).

**DISCUSSION**

**I.     Plaintiff Liyou Xing**

    **A.     Overtime and Unpaid Wages Claim for the Period from September 2016 to February 2017 and May 2017**

Defendants move for summary judgment as to Xing's FLSA and NYLL claims for unpaid wages and overtime pay for the period from September 2016 to February 2017 and the month of May 2017.  (Dkt. 91, at 8.)  This portion of Defendants' motion is granted in part and denied in part.

As an initial matter, the Court notes that the Amended Complaint does not state an overtime claim for the period from September 2016 to February 2017.  It states that Xing's "regular work schedule ran from 09:00 to 18:00 with [a] one[-]hour meal break, five days per week and eight hours per day, *for a total of 40 hours each week*."  (Am. Compl. ¶ 63 (emphasis added).)  This

allegation is supported by Plaintiff Xing's own testimony that he worked 40 hours per week during this time. (Xing Dep., at 31, 49, 76.) Plaintiffs cite no evidence to the contrary; rather, they falsely accuse Defendants of "not disclos[ing] Mr. Xing's entire deposition testimony." (Plaintiffs' Counter-Statement of Undisputed Material Fact in Opposition to Defendants Motion for Summary Judgment ("Pls. 56.1") ¶¶ 14, 16, 18.)[9] The Court's own review of the record shows that Xing did occasionally work overtime during the contested period, for which he was compensated. (*See, e.g.*, Dkt. 92-4, at 5–8.) However, the fact that Defendants paid Xing overtime on some occasions does not give rise to an overtime claim as to the rest of the period in question, especially where the undisputed evidence shows that Xing did not otherwise do any overtime work. To state a claim for overtime pay under the FLSA and/or NYLL, a "plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013); *see also Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 43 (E.D.N.Y. 2015) ("The NYLL largely adopts the same standard as the FLSA with respect to overtime compensation."). Xing has failed to identify any uncompensated time in excess of 40 hours for this period. Therefore, Defendants' motion for summary judgment is granted for the period from September 2016 to February 2017.

With respect to Xing's May 2017 overtime claim, Defendants' motion for summary judgment is granted except for the week from May 5 to May 11, 2017. Although Xing also testified that he did not work overtime in May 2017 (Xing Dep., at 78), Defendants' time records show that he worked 49.19 hours for the week of May 5 to May 11, 2017 (Dkt. 104-8, at 1), but was only

---

[9] The court reporting service used for Xing's deposition notified Plaintiffs' counsel on February 17, 2021—eight months before the instant motion—that the transcript was ready for review and that they should contact the court reporting service for a complimentary copy. (Dkt. 102-2.) Plaintiffs' counsel is cautioned about making specious claims, such as this one about Defendants "not disclos[ing]" the entire deposition transcript.

11

compensated for 40 hours (Dkt. 92-4, at 20).

With respect to Xing's unpaid wage claim for the challenged period, *i.e.*, from September 2016 to February 2017 and the month of May 2017, Defendants' motion is granted except for the two-week pay period from September 17 to September 30, 2016. Based on the undisputed pay records, Xing was compensated for at least 40 hours of work per week during this period (*see* Dkt. 92-4), except for the aforementioned two-week pay period in September 2016. During that single pay period, Xing was compensated for 78.50 hours of work, or an average of 39.25 hours per week, rather than the 40 hours per week he claims to have worked. (Dkt. 92-4, at 3.) Xing has not identified any other period during which he was underpaid.

### B. Spread-of-Hours Claim for the Period from September 5, 2016 to March 2, 2017

Defendants also move for summary judgment as to Plaintiff Xing's spread-of-hours claim for the period in which he worked as a construction worker, *i.e.* from September 5, 2016 to March 2, 2017. (Dkt. 91, at 9–10.) Under NYLL, spread-of-hours compensation "is a scheme under which employees are entitled to an extra hour's worth of pay at the minimum wage if the employee works in excess of ten hours in a day." *Landi v. 341 Hancock LLC*, No. 16-CV-2655 (ERK) (PK), 2017 WL 2804928, at *1 (E.D.N.Y. June 27, 2017). According to the Amended Complaint and Xing's own deposition testimony, he did not work more than ten hours per day during the given period. (Xing Dep., at 31, 49, 76.) This is further supported by Defendants' time records. (*See* Dkt. 104-31, at 1–4.) Therefore, Defendants' motion is granted as to Plaintiff Xing's spread-of-hours claim from September 5, 2016 to March 2, 2017.

## II.     Plaintiff Hualiang Li

Defendants move for summary judgment as to all of Plaintiff Li's claims[10] outside of the time period of March 17, 2017 to May 11, 2017. (Dkt. 91, at 10.) Defendants' motion is granted.

Although the Amended Complaint alleges that Li worked at Wyndham Garden restaurant at the Mayflower Hotel from February 1, 2017 to May 31, 2017 (Am. Compl. ¶ 100), Li testified at his deposition that he worked there from March 2017 to May 2017 (Li Dep., at 19–20). He also testified that he "[did] not have any reason why [Defendants'] record is not correct" (*id.* at 38) and Defendants' records show that Li was employed at the Mayflower Hotel from March 17, 2017 to May 11, 2017 (*see* Dkt. 104-22, at 2–9 (showing Li's first pay period beginning March 17, 2017 and his last pay period ending May 11, 2017)). Therefore, the Court limits all of Li's claims to the period between March 17, 2017 and May 11, 2017.

## III.    Plaintiff Junhua Yu

Similarly, Defendants move for summary judgment as to Plaintiff Yu's claims outside of the time period of September 17, 2017 to January 28, 2019. (Dkt. 91, at 13.) Defendants' motion is granted in part and denied in part.

The Amended Complaint states that Yu was employed from September 17, 2017 to February 28, 2019 (Am. Compl. ¶¶ 138–39); however, Yu testified at her deposition that she stopped working for Defendants "at the end of January [2019]" (Yu Dep., at 58) and Defendants' records show that Yu worked for Defendants until February 1, 2019. (Dkt. 104-31, at 26.) Thus,

---

[10] It is not clear from the Amended Complaint what those claims are and, therefore, for the purpose of this motion, the Court assumes that all seven counts of the Amended Complaint are alleged on behalf of all Plaintiffs.

13

all of Plaintiff Yu's claims are confined to the period between September 17, 2017 and February 1, 2019.

### IV. Plaintiff Amanda Liu

Defendants move for summary judgment as to Liu's claim that she was not compensated for cleaning Defendant Hu's house three (as opposed to two) times, because Liu was "paid [] $200 the first time she cleaned Ms. Hu's home." (Dkt. 91, at 13.) Defendants' motion is granted.

Although the Amended Complaint alleges that Liu was not paid for "cleaning [Defendant Hu's] private house about 3 times over the course of her employment" (Am. Compl. ¶ 149), Liu testified at her deposition that she was, in fact, paid $100 the first time she cleaned her boss's home (Liu Dep., at 24, 37). Thus, Liu's claims regarding unpaid compensation for cleaning Defendant Hu's home are limited to the two occasions when Liu allegedly received no compensation.

### V. Plaintiff Wingkit Loi

Defendants move for summary judgment as to all of Plaintiff Loi's claims because, "aside from his own [deposition] testimony, there is no evidence that he was ever employed by any Defendant." (Dkt. 91, at 16; *see also id.* at 11 ("Defendants have been unable . . . to confirm that Loi was employed with any Defendant.").) This is an incomplete recitation of the record. Plaintiff Li testified during his deposition that he knew Loi and had occasionally worked with him at the Mayflower Hotel. (Li Dep., at 12, 39; *see also id.* at 39 ("He worked for the electrical department, you know, things like that . . . .").) Li's testimony, coupled with Loi's own testimony, is sufficient to establish a genuine issue of material fact as to whether Plaintiff Loi was employed by Defendants. *See Tarax Tarax v. Blossom W. Inc.*, No. 19-CV-6228 (AJN), 2021 WL 1226954, at *4 (S.D.N.Y. Mar. 31, 2021) ("[A]t this juncture, the Court must credit [deposition] testimony as

14

creating a genuine issue of material fact."). Therefore, Defendants' motion is denied as to this issue.

In the alternative, Defendants ask this Court to dismiss Loi's spread-of-hours claim. According to Loi's own deposition testimony, he did not work more than ten hours a day during his employment with Defendants. (Loi Dep., at 43–44, 53–55, 59, 63, 65.) Because Plaintiffs offer no contrary evidence, Defendants are granted summary judgment as to Loi's spread-of-hours claims.

## VI. Individual Defendants

Defendants move for summary judgment as to all Plaintiffs' claims against Defendant Ge, and Plaintiff Xing's and Loi's claims against Defendant Hu, on the grounds that neither Ge nor Hu were Plaintiffs' "employer" under the FLSA. (Dkt. 91, at 20.) Defendants' motion is denied.

The determination of whether an employer-employee relationship exists for purposes of the FLSA and NYLL[11] "should be grounded in economic reality rather than technical concepts, determined by reference not to isolated factors, but rather upon the circumstances of the whole activity." *Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 141 (2d Cir. 2008) (internal quotation marks and citation omitted). The "economic reality" test sets forth the relevant factors courts analyze to determine if an alleged employer had the power to control the subject worker, namely whether the alleged employer "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999). No factor is dispositive and

---

[11] *See Bozdogan v. 23 Ludlam Fuel*, No. 16-CV-1053 (JMW), 2022 WL 4273851, at *7 (E.D.N.Y. Sept. 15, 2022) ("The NYLL's definition of 'employer' is coextensive with the FLSA's definition of employer.").

15

"any relevant evidence may be examined so as to avoid having the test confined to a narrow legalistic definition." *Id.*

Defendants Hu and Ge's deposition testimony is replete with "vague denials and memory lapses." *FDIC v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 205 F.3d 66, 75 (2d Cir. 2000). As discussed, incredibly, both Ge and Hu—despite undisputedly being owners and shareholders of the Corporate Defendants—claim not to recall what the function of the Corporate Defendants is or what they themselves do in connection with the Corporate Defendants who employ Plaintiffs. Conveniently, their claimed lack of memory encompasses every relevant factor under the "economic realities" test, *i.e.*, they cannot recall whether they have hiring or firing authority, whether they supervised and controlled employee work schedules or conditions of employment, determined the rate and method of payment, or maintained employment records. (*See, e.g.*, Hu Dep., 25–29, 32–33, 41–53, 55–56; Ge Dep., 17–19.) As the Second Circuit has explained, having "no recollection . . . does not constitute a denial." *Genger v. Genger*, 663 F. App'x 44, 49 n.4 (2d Cir. 2016). Therefore, Defendants have failed to meet their burden of demonstrating the absence of any genuine issues of material fact as to whether they are Plaintiffs' employers under the FLSA and NYLL, and Defendants' motion for summary judgment as to Hu and Ge is denied. *See Zanghi v. Inc. Vill. of Old Brookville*, 752 F.2d 42, 47 (2d Cir. 1985) ("If the movant fails to meet that burden, the opponent will prevail even if the opponent submits no evidentiary matter to establish that there is indeed a genuine issue for trial.").

## VII.    Corporate Defendants

Defendants move for summary judgment as to Plaintiffs' claims against Defendants MBG, Mayflower Inn, and Mayflower 1-1 on the grounds that they "were not Plaintiffs' employers for purposes of the FLSA or the NYLL and Plaintiffs cannot demonstrate otherwise." (Dkt. 91, at 21–

16

22.) By contrast, Plaintiffs allege that the Corporate Defendants are a "single" enterprise under the FLSA and, therefore, may all be held liable as Plaintiffs' employer. Defendants' motion for summary judgment is denied as to this issue.

An entity constitutes an "enterprise" under the FLSA where "the related activities [are] performed (either through unified operation or common control) by any person or persons for a common business purpose." 29 U.S.C. § 203(r)(1). Courts use a three-part test to determine when an entity is an enterprise: "(1) the entity or entities must engage in related activities, (2) performed through unified operation or common control, (3) for a common business purpose." *Jones v. Pawar Bros. Corp.*, 434 F. Supp. 3d 14, 21 (E.D.N.Y. 2020). As discussed above, Defendant Hu's "vague denials and memory lapses" concerning the role and function of each Corporate Defendant, how (or if) the Corporate Defendants relate to each other, and whether the Corporate Defendants engage in related activities, *Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 205 F.3d at 75, "do not constitute a denial" of the allegations that the Corporate Defendants are a single enterprise, *Genger*, 663 F. App'x at 49 n.4. Moreover, as Defendant Mayflower Inn's 30(b)(6) witness, Hu's deposition testimony "is binding in the sense that whatever its deponent says can be used against the organization." *Keepers, Inc. v. City of Milford*, 807 F.3d 24, 34 (2d Cir. 2015) (internal quotation marks omitted). Therefore, Defendants' motion for summary judgment as to Defendants MBG, Mayflower Inn, and Mayflower 1-1 is denied.

## CONCLUSION

For the reasons set forth above, the Court grants in part and denies in part Defendants' motion for partial summary judgment.

With respect to Plaintiff Xing, the Court: (1) grants summary judgment as to his overtime claim for the period from September 2016 to February 2017; (2) grants summary judgment as to his overtime claim for May 2017, except for the period of May 5 to May 11, 2017; (3) grants

17

summary judgment as to his unpaid wage claim for the period from September 2016 to February 2017 and the month of May 2017, except for the period from September 17 to September 30, 2016; and (4) grants summary judgment as to his spread-of-hours claim for the period from September 5, 2016 to March 2, 2017.

With respect to Plaintiff Li, Defendants' motion for summary judgment is granted. Li's claims will be limited to the period from March 17, 2017 to May 11, 2017.

With respect to Plaintiff Yu, Defendants' motion for summary judgment is granted in part and denied in part. Yu's claims will be limited to the period from September 17, 2017 to February 1, 2019.

With respect to Plaintiff Liu, Defendants' motion for summary judgment is granted. At trial, Liu will only be permitted to argue that she was not compensated for cleaning Defendant Hu's home on two occasions, not three.

With respect to Plaintiff Loi, the Court: (1) denies Defendants' motion for summary judgment on the grounds that he was not employed by Defendants, but (2) grants Defendants' motion for summary judgment as to his spread-of-hours claim.

With respect to the Individual Defendants, Defendants' motion for summary judgment is denied.

With respect to the Corporate Defendants, Defendants' motion for summary judgment is denied.

With respect to Defendant Yuehua Hu, the Court intends to dismiss her from this action because she is duplicative of Defendant Wei Hong Hu. The parties have **7 days** from the date of this order to notify the Court of any objections to Yuehua Hu's dismissal.

18

The parties shall file a joint pre-trial order that complies with the Court's Individual Rules within **thirty (30) days** from the date of this Memorandum and Order.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 30, 2022
        Brooklyn, New York